Jesus Christ is the Answer Ministries v. Baltimore County, and Mr. Storzer, whenever you're ready, we'll hear from you.  Roman Storzer for Rev. Lucy Ware and Jesus Christ is the Answer Ministries. This case is about a church that needs a home. They've needed a home for many years. They found one on property that permits such use, that permits it by right. They met all the applicable zoning regulations, and they have been denied. They were denied once, first in what we call an action called Ware 1, again because of certain reasons I'll get into, again in Ware 2 after they fixed those problems. Was the first application denied only on the buffer and setback, or was it also the parking? The first application was denied solely on the buffer and setback issues. The parking issues were not reached because they were made moot because of the other determination. And the second one was never reached on the merits. It was never reached on the merits. That's correct. And what's interesting here, Your Honors, is the very peculiar nature of the Baltimore County zoning regulations here. In addition to saying that a church is a permitted use in this zoning district, it says that there are certain- You're not arguing that the first petition is dispositive here. You're relying on the second petition. We are relying solely on the second petition. The first petition involved a situation where the proposed parking lot was placed directly next to the property in line, next to the neighbor here. Solely on that basis, the Board of Appeals denied it. That decision was appealed to the Maryland courts. And again, solely on that basis, that decision was affirmed. Reverend Ware then filed her second petition where she cured that problem, where she moved the parking lot to the center of the property, and she complied with what are called the RTA regulations, which don't say that if you're a church, you must meet the setback and buffer requirements. They say that you have to comply with those requirements to the extent possible. And that's the critical issue here. The position that the county has taken is that because she did not meet those requirements completely, that she had no reasonable expectation. I don't know if they can take that position. In other words, the first petition was denied because there was no buffer and setback. The second petition addressed that and eliminated the parking as an issue altogether. And it was never ruled on the merits. It was basically all the way through, it was said because the first petition was denied, the second had to be denied on race judicata. And the district court in this case found that race judicata doesn't apply. I mean, I think it's pretty clear it doesn't apply. But the question then is if they've never addressed the second petition on the merits, where do we go? It looks, I mean, your argument, it's a pretext for both discrimination and burdening, and that that's what is being done here. There's a reaction to the community and to the protesters. But if we agree with you that they've never reviewed the second petition, I mean, it's within the zoning, I guess. The zoning permitted it always. It was just a matter of placing the organizing the property so as to do the best you can, as it says, under the setbacks. Well, I guess your argument is this is a 12 v. 6, and we should just reverse that and let the case go and take its own course. Absolutely. And again, Your Honor, as the complaint states, the requested relief here is not an order permitting the church to worship at the location, but simply to send it back to the board to review it on its merits, to make the determination of whether the church has complied to the extent possible with the RTA regulations. And additionally, the second part of that is to determine whether it's in character of the community, the same community where there are multiple other churches. Well, I thought in this case, but, I mean, what we're reviewing is the district court's opinion. And on your substantial burden claim, my understanding of what the district court said was that you don't have a substantial burden claim because your clients did not have a reasonable expectation, citing our Andron case, for use of the property. So isn't that the issue that we have on your substantial burden case, whether the district court was right or wrong? There are two major points there, Your Honor. The first is the reasonable expectation. Certainly, for all the reasons we argued, the applicant here had a reasonable expectation. The use was permitted. They complied to the extent practical. It was permitted as a right. The planning director signed off on it. There's no reason to deny this, other than this res judicata issue, which was faulty from the outset, as even the Baltimore County People's Council admitted in taking back his motion. I understand that the real estate agent also advised her as she was buying the property that she could use that for a church. Right, and certainly the statement by an agent is not by itself, I believe, dispositive. But as a matter of fact. So there's an expectation the agent is reciting the zoning. Absolutely, and she was correct as well. The zoning does permit it. Her use is completely permitted here. I would like to address Your Honor's question in another way as well, and that is the district court's sole reliance on the reasonable expectation standard. And I understand from this court's decisions in the Bethel case and in the Andron case, the focus and the importance that the district court placed on that factor. But it can't be determinative. It cannot be the sole factor on whether RLUIPA's substantial burden standard is violated or not. I'd like to give the court an example. Well, but if the district court was wrong on that point, I mean, it goes back. Correct? I mean, you've won on that point if we determine the district court was incorrect. Incorrectly applied Andron and Bethel. Your Honor, it does go back, and if the petition is denied again, then it will be back up before the district court, and the district court may be applying a faulty standard again. And that faulty standard is that if there's no reasonable expectation, that the substantial burdens provision cannot be violated. Again, if there was a zoning regulation that stated, for example, churches are permitted by right, but no services are allowed on Sundays, or you're not allowed to have a storefront church, or any host of other examples, a church that comes in and attempts to seek a place of worship, whether it's on Sundays or in a storefront church, would not have a reasonable expectation to be able to locate in that jurisdiction. But I believe that Congress certainly was clear that RLUIPA should be read in a broad manner. It's one of the provisions of the statute, to the extent permitted by the Constitution. A land-use regulation that says no services on Sundays would substantially burden most Christian churches. But that's not this regulation. That's not this regulation. Why would we need to get into any of that? I mean, if we agree with you, it's a use permitted as a right, and there is no basis to say there was no reasonable expectation. Why wouldn't that just end it? Your Honor, again, if it goes back before the board, if that is the district court, if it goes back to the district court. We've got a lawsuit pending in the district court, and there's a 12B6 motion, and if you were to succeed, all we do is send it back and say your complaint is operative, and you continue in that case. The answer has to be filed, discovery has to be whatever the next proceeding is. Correct, Your Honor, but the requested relief, again, is to be sent back before the board to review the merits of the petition. We don't do that, do we? That's the district court's. No, but I believe that it certainly would be beneficial to. . . We directed the court to send it back? To fix the standard that the district court has erroneously applied in this case. If it does eventually end up before the district court, the same standard, the reasonable expectation, which I believe was not what this court held in Bethel, I believe that the court's decision in the Andon case muddied the water somewhat in suggesting that perhaps that was the only factor to look at. I mean, I thought the problem here was that even with respect to that factor, the district court simply got the facts wrong, right? Absolutely, Your Honor. I'll move on to the discrimination. The problem procedurally with your response, because you filed a suit in the district court, and if we were to send it back, you'd like it to get back before the board, but that's relief you'd have to get from the district court if you carried the day. I mean, we accept your allegations as true at this point, and you would have to prove it, and the court would have to give that as relief. I guess your point is if we made clear the correct standard, then you would have a greater likelihood of getting the relief from the district court, but the district court still has to be the court to give you relief, right? Yes, certainly, Your Honor. As a procedural matter. Yes. I'll move on to our discrimination claims. The RELUPA non-discrimination provision as well as our equal protection claim, which are analyzed under the same standards generally. The district court here, I believe, erroneously applied that standard, that provision as well, by effectively saying if the discrimination doesn't come out of the mouths of the board members, there can be no discrimination. I mean, I see your light's on, but let me ask you one question that's unrelated to that, and this was not raised by Baltimore County, and you may want to look at your complaint before you come back up on rebuttal, but tell me very briefly where in the complaint do you allege religious discrimination? There's a lot of discussion that could be taken as race-based, ethnicity, national origin, but I didn't find in my reading that you alleged discrimination on the basis of religion or religious denomination. If I may respond to that question, Your Honor? Yes, of course. There are allegations in the complaint stating facts such as she can come over here from Africa, branch out from another church and put all this in her neighborhood, dancing and hollering like they're back at their home back in Africa somewhere. They were out there dancing like from Africa. These are paragraphs 106 to 108. I mean, that would be a national origin claim, a race-based claim, but under RLUPA it has to be a religion-based claim. That's what I'm not seeing. We certainly believe that that describes the particular religious exercise of this church. It is in the nature of an African church where there may be dancing, there may be singing, the reference to another church from Africa, branching out from another church, that they're not being attacked because they're African or because they're African American, but rather specifically because they are engaging in the type of religious exercise that an African Christian church is known for. And you said, just one additional question if I may, you said that the district court made the mistake of concluding that if the discriminatory remarks did not come directly from the board in this case, that that wasn't good enough. And I don't necessarily disagree with that, but on the other hand, the mere fact that others may have said offensive things about the church and its members, I don't see where in the record there's anything to suggest that the board either agreed with that, acceded to it, you know, concurred with it, or did anything. You point to the fact that they ruled incorrectly, that they went against the people's counsel in suggesting that res judicata was appropriate. But how does that make out a plausible discrimination claim without some evidence suggesting that they, in fact, adopted the admittedly offensive views of some of the citizenry? Again, Your Honor, the facts that are relevant here are the fact that it was them that continued to prosecute the exact problematic res judicata motion that the court ruled on. So you're suggesting that the board couldn't rule on it simply because the parties themselves might have been offensive? I would also direct the court to the Marks v. City of Chesapeake case where, as I understood the facts in that case, the relevant government body didn't make any comments about the application before them and simply denied them after the offensive comments that were made. And this court said that the city council, in that case, could not placate those members of the public by denying the application, where there was, again, no evidence that the members of the city council adopted that type of animus. We're on a motion to dismiss here, Your Honor, and I believe that it is certainly plausible that there's a reasonable inference that the Protestants who engaged in this despicable behavior in terms of their treatment of the church and the statements that they made against the church, they pursued this motion, a motion that was abandoned by its original proponent, and then the board jumped on that and agreed to dismiss the petition solely on that basis. At this stage, on a 12 v. 6 motion, I believe that that's enough. There was also one there, the director, who was in charge of this type of thing, agreed that there was no reason they couldn't go ahead and use it as a church. Exactly, Your Honor, as long as there was a landscape plan or something like that that was appropriate. And that is a significant factor and one that other courts have looked at as well. Thank you, Your Honors. I guess we'll hear from Mr. Gore. Good afternoon, Your Honors, and may it please the Court. John Gore on behalf of the United States. The District Court erred in dismissing the plaintiff's reluptant claims in this case, and the Court should reverse. On the substantial burden claim, the District Court ignored several relevant factors that have been established in the case law of this Court and other circuit courts, and it misanalyzed the one factor, the reasonable expectation factor, that it did consider. And on the nondiscrimination claim, it failed to consider the inferential case that had been plausibly pled by the plaintiffs based on departures from normal procedures and the community bias. A substantial burden claim under RLUIPA requires a court to analyze the totality of the circumstances, but the District Court ignored virtually all of the circumstances here. First, the plaintiffs have plausibly pled that they have a need for a house of worship. And, in fact, that point is undisputed at this juncture of the litigation. The congregation is forced to squeeze into Reverend Ware's modest two-bedroom home. It can't perform weddings and hold other events. It's had to discontinue its ministry and its evangelizing because it's in an inadequate facility. Second, the plaintiffs plausibly pled, and the District Court ignored, that the plaintiffs were ready, willing, and able to substantially comply with the zoning regulations. In fact, they've alleged that they did comply with the zoning regulations because they complied with the RTA setback requirement to the extent possible. The second petition didn't seek any exception on the buffer. It eliminated the prior parking variance request that had been in the first petition, and it complied with the setback provisions to the extent possible. So, as the plaintiffs have alleged, that would indicate that they've, in fact, complied with the zoning regulations. The third factor and set of allegations that the District Court ignored was the plaintiffs' plausible pleading that the county completely denied and prevented any religious use on the property. This wasn't a case where the county suggested some conditions or in the normal back-and-forth in the zoning process asked the church to make certain modifications. It imposed a race judicata bar, which would appear to bar any future petitions as well, at least on the erroneous rationale that the board adopted. Was there some evidence in the record that that was unusual with respect to this application, or do you recall? So, the plaintiffs have certainly pled that that race judicata rationale has been inconsistently applied and that it was legally erroneous, and the District Court seemed to agree that it was legally erroneous, and there hasn't been a chance for the plaintiffs to adduce evidence yet that it was inconsistently applied, but that is one of the allegations in their complaint. And, in fact, that's another factor that the District Court ignored because one of the factors in the RLUIPA case law is whether the decision-maker's decision is somehow arbitrary, and they've alleged that. They've alleged that it was legally erroneous and inconsistently applied. And the fifth and final factor that the District Court overlooked, but that the plaintiffs plausibly pled, is that this decision by the board left them without any quick and feasible alternative. And that's another factor that the District Court should have looked at and that the case law establishes. Let's talk for a moment about the District Court's erroneous reasoning on reasonable expectation. Remember what the District Court said about reasonable expectation. It said that Reverend Ware did not have a reasonable expectation of a religious use of this property and that any harm was self-inflicted because Reverend Ware hadn't gone out and researched the zoning regulations at some point in the past. It's unclear whether the District Court thought that should have happened before buying the property or before filing the first petition. But this rationale is erroneous for a couple of reasons. First, RLUIPA doesn't impose that kind of requirement on its face. Second, this is the only court of which the United States is aware that has ever imposed that kind of requirement of some prior research. And it makes particularly no sense here because imagine what would have happened if Reverend Ware had gone out and researched the zoning regulations. She would have discovered confirmation that her realtor was correct, that religious use was permitted as of right in this area and on this property. She also would have discovered confirmation of her own observation because there were 10 other religious houses of worship within a mile of the property and about two within a quarter mile. And she would have learned that she could petition for an exception if she complied with the RTA requirements to the extent possible and in a way that could be expected to be compatible with the character and general welfare of the surrounding residential premises. So the zoning regulations themselves underscore that any expectation of religious use here was reasonable because she filed a second petition that either substantially complied or did comply with the exception requirements, and so therefore she should have been able to use the property and certainly had a reasonable expectation of doing so. And that's what makes this case different than Andon. So Andon was a case where the plaintiff and the church wanted to engage in a use that they knew was contrary to law. They had been told it was contrary to law, and the zoning officials told them that they were unable to qualify for a variance. Here, the church is asking for permission to engage in a use that it believes is legal, not one that it believes is illegal like the plaintiff in Andon. And in fact, they're correct about that. At least they've pled that they're correct about that because the second petition complies. I understand your colleague's argument, though, that even that contrary to law exception is subject to analysis under the statute if it imposes an unreasonable burden on the petitioner. Is that right? Absolutely. That's absolutely correct, and the district court did not engage in that analysis in the way that it should. And the district court cited Andon, which for the reasons I've just explained is distinguishable, but there's also a distinction in the allegations in Andon compared to this case. So, for example, we walk through a few of the factors that the district court failed to consider, and those factors cut the other way in Andon. So, for example, there was no allegation in Andon that the church could substantially comply with the zoning regulations. Here, the plaintiff has made that allegation with respect to the second petition. Second, in Andon, there was no allegation that the church actually did comply with the zoning regulations. And here, the plaintiff has alleged that, in fact, the church did comply to the extent possible as required by the RTA exception. Third, there was no allegation in Andon that the zoning decision-maker's decision completely foreclosed religious use on the property. Here, we do have that allegation because the race judicata bar on the second petition, which was erroneous, has the effect of completely barring any religious use on this property. And fourth, there was no allegation in Andon of arbitrary decision-making. In fact, it appears that the zoning authorities did it by the book, whereas here there is an allegation of arbitrary decision-making in misapplication of the race judicata rationale for rejecting the second petition. So this case is more like Bethel, where the court held there was a reasonable expectation where religious use was permitted as of right, even though the church had to petition for it and wasn't guaranteed to receive approval. And in Bethel, there also was a complete denial of religious use. So this case is more like Bethel and, in fact, has stronger allegations on the substantial burden claim than were present in Bethel. So for that reason, the court should reverse, and I'd be happy to answer any other questions, but I see my time is up. Thank you, Mr. Gore. Thank you. Thank you. Good afternoon. May it please the Court. I will address the arguments made by Mr. Storzer initially, at least attempt to reply, and Mr. Mayhew, that will be 13 minutes, Mr. Mayhew will argue in response to Mr. Gore. I thought they both made the same arguments, but that's okay. I don't know. Present it however you wish. First of all, the Court needs to know that the Board of Appeals did, in fact, review both Where 1 and Where 2 in its opinion and order in Where 2, which appears in Appendix Page 120. It goes through and thoroughly analyzes the petitions in both cases. Secondly, there is pending in the Circuit Court for Baltimore County at this moment a petition for judicial review of the Board's decision. That matter has, I think, as far as I know, there's a scheduling order, but they will have a judicial review, as they did in Where 1, of Where 2 in the Circuit Court for Baltimore County. We're not here about a judicial review. Judge Bennett said, I'm going to abstain from that, and that's why they filed in the Circuit Court. What we've got here is a RLUIPA claim. That's correct. This is a RLUIPA case. That's what you need. That's really what we're sort of departing, I believe, from what RLUIPA says, and more particularly what the Andon case, a binding precedent of this circuit, says. And in that case, this Court said that the plaintiff did not plausibly plead a substantial burden claim because of the fact that they had bought, leased the property. They were smart enough, at least, to have a contingency clause. There was none here. They tried to meet their four requirements for a variance. They were unable to meet the third requirement, and they didn't get the relief. They sued. This Court said when they entered into that lease, they did not have a reasonable expectation that they would be able to do what they wanted to do. Well, in the Andon case, there wasn't a use by right, as there is in this case. I believe there was. I could be wrong. Maybe that was Bethel Law. Sometimes I get the cases confused. But what the Court respectfully requests needs to look at is, yes, it's a use permitted as a right, but then you go and you look at the actual zoning regulations, and this is appendix page 156. It starts off discussing density residential zones. Use is permitted as a right includes a church, number four. But then you go on and you go to B, which talks about dwelling type and other supplementary use restrictions based on existing subdivision and development. In other words, this case started out with Ms. Ware conducting not even minimal due diligence. She bought a single-family dwelling that had been a residence for 61 years and it was located in the middle of a block in a completely residential neighborhood called Diana Acres. She put down gravel in the backyard for parking and began her activities in complete disregard of the character and general welfare of the surrounding residential premises and in violation of the Baltimore County zoning regulations. Those are the, that was the first petition. She didn't observe the, there were three charges, buffer setback and parking. And in her second petition, she eliminated the parking problem and she satisfied the buffer problem and the setback was as good as possible. Some of it was very close, almost to 75 feet. But other parts, I think, went down to 49 feet or something like that. But she alleges in the complaint that that was as good as possible. But I want to get back to, you said they reviewed the second petition and It's pending in the circuit court for Baltimore County. No, I said it was never reviewed and you said it was and you referred me to page 120. Yes, sir. And I've just looked at it. I can't see where they reviewed it at all. They dismissed it for race judicata.  You're talking about the court or the Board of Appeals? The Board of Appeals. This is the Board of Appeals. Okay. Page 120 is where the decision starts. I see it. Actual background. They list the two, four, five and six. Of course they list the two, but they didn't review the second one. They discussed where one, Your Honor, and then they discussed where two. Of course, but they didn't review where two. They gave the historical background and then they dismissed where two for race judicata and that's the only reason they gave. Because they were seeking. I'm not because. I'm just saying the only thing they examined was race judicata. They did not review the merits of whether it complied. They reviewed the merits of the claim that they were now changing their petition to assert that they wanted to build an addition under subparagraph G4. That was completely different. As an existing church. And the Board said, hey, wait a minute, you're not an existing church. That doesn't make any logical sense. You and I are not reading the same paper then. I just, they gave the background and then when they considered where two, they applied race judicata and a lengthy discussion. And that's how they got rid of it. But also. They didn't dismiss it on the merits. Pointed out that they were seeking at that point an addition. You can see it in the drawings that they provided at page 24 of the appendix. They were seeking an addition under G4. Okay. Well, that's depicted on the drawing. There's the addition. Look, they didn't rule on it. Well. Even the conclusion. They say, in the conclusion, they said where one, basically where one decided the question and they're not going to decide it again. If the Board was wrong in that respect, Your Honor. Not that respect. That's the only respect. In other words, they didn't consider where two on the merits. They are seeking judicial review of the Board's decision right now in the circuit court. Well, they may be. But my point was, initially, you were responding to my point that you're trying to suggest that the Board had reviewed it on the merits. They never reviewed it on the merits. They've never gotten a hearing on whether the revised petition was acceptable under the zoning code. Well, can I point something out to the Court, please? Of course. And that would be at page 24, which is the second diagram in their complaint. And it's very difficult to read, but if you'll look at the drawing at page 24, it depicts the house. It predicts a proposed one-story addition under G4 of the RTA regulations. And then if you look at the southeast. What's the significance of this? Because if you look at the southeast corner of the brick building, approximately 920 square feet is within the RTA buffer. And the corner of the building is. We're not the trier of fact here. I'm sorry? We're not the trier of fact here. Understood. Well, just wait a minute. At the Board of Zoning Appeals, that might be an argument. Maybe it would be in the district court. But we're not here for any of that. We're not finding any facts. What we're reviewing is the district court's decision that says there was an unreasonable expectation. So all this other, I don't think, has anything to do with that. What you need to do is tell us why the district court's finding on unreasonable expectation was correct. Yes, Your Honor. And I was only responding to what was asserted that it was complete, where two was completely in compliance. Okay. It's not. We're beyond that. Okay. Tell us why the district court was correct. I agree. The focus of this case is on RLUIPA and on the Andon case. Before you get to that, I want you to get to that. But you've mentioned twice that there's a petition for review pending in the circuit court. You're not suggesting that this lawsuit is somehow, that they haven't exhausted their administrative remedies, or they're not properly before the court, are you? At this point, no. So why are you bringing that up? Because Mr. Storzer was saying that they wanted to have this matter reviewed by the board. They have the ability to do that because they have a case pending in the circuit court. The argument was, and the allegation was, that the board never reviewed the second one. And they assert that the second one complies with zoning regulations as best as possible. That's what they assert. Now, that's what we accept as true for analyzing the RLUIPA, this complaint in the federal court. Well, back to Judge Agee's point, and it's the crux of this case, is whether or not they have plausibly pled a violation of RLUIPA, substantial burden claim, nondiscrimination, et cetera. The district judge, in an exhaustive 42-page opinion, did recite all the facts. The Court of Special Appeals, in a very well-written decision, reviewed where one, which is not being challenged, and came up with a conclusion they had not even minimally complied. Well, when the district court did its analysis, it seemed like it just completely forgot about where two and was speaking in terms of where one, which is not before us. So, where's the unreasonable expectation? Well, as I started to say, Ms. Ware, the real estate agent says, yes, it's a permitted use, right? Real estate agents are trying. Which was correct. Correct. But there's more to it. There's another story, and that is, if you go into the regulations, right after that is permitted use, you see the residential transition area regulations, which came into play here. It's going to apply to any purchaser in that zoning who has uses of right. They're going to have to comply with the rest of the conditions, and that's what they've attempted to do and where to. So, what's the unreasonable expectation about that? Because you look at the circumstances at the time Ms. Ware bought the property. At the time she bought the property, what was her reasonable expectation? It was to build a church, except there are other requirements that she had to meet. She had to meet the residential transition area requirements. But that wouldn't have prohibited her from putting on a church. All that would have required is adjusting the setbacks. The church use was approved as of right under the zoning. And so what the real estate agent said to her turns out to be correct. And now the second point, you come back and say, well, there are additional requirements. You have to have the setback buffer and the parking type of thing. And they say they comply with that. I'm not coming back, Your Honor. I'm just saying what the regulations state and what is required. She had an expectation of putting a church there because the zoning explicitly provides the church can be put there. Well, I guess I'll try to frame it this way. Let's take a residential neighborhood. It's been a residential neighborhood for 61 years, all residences. Somebody comes in and decides I'm going to have a church here. And they buy it. A reasonable person would say, wait a minute, this is a residential neighborhood. Maybe there's more to this than meets the eye. I better see if I can build this or have this church. And so a reasonable person would go to a lawyer and say, hey, I'm going to enter into a contract of sale. What do you think? A good lawyer would say, we better check the zoning regulations and see what the requirements are for you to be able to have a church in this clearly residential neighborhood. That would be what is reasonable. That was not done in this case. Well, she acted, she may have acted unreasonably, but that doesn't address the question of whether or not a purchaser in her shoes would have had a reasonable expectation of success had she complied with the regulation. And she's now complied with the regulation. Well, I disagree that she's complied.  Because the house is 28 feet from. You're not playing the rules of the game. This is 12b-6. She's alleged she's complied. Right? But her complaint shows she hasn't complied. The diagram shows she hasn't complied. Well, she alleges she complied. And the regulation does say as much as possible, or whatever the language is. But she's alleged it. We have to accept that. But they put a diagram that shows it's not correct. I mean, it's just not correct. It doesn't comply with the RTA regulations on its face. So I think that I see my time is running out. I would only ask the court to go back and think about what's reasonable for a person who's coming into this neighborhood, buying a property and wants to start a church. All of a sudden, there's 50 cars parked on the property on gravel or grass. And the neighbors are going, what's going on here? And the reason the neighbors are going, what's going on here, is because their properties are being completely affected by this. And the reason the RTA regulations exist is to protect the adjoining property owners. And that's why she has to comply. And that's, she should have known that at the time she bought the property. If she didn't know that, that's her own fault. It's nobody else's fault but hers. She assumed the risk of buying that property without completely checking into whether she could have a church there. That's the point of this whole, of this case. So then she files a petition in Where 1 and does not even minimally comply. This is the Court of Special Appeals says this. Yeah, Where 1 is not before. Okay, understood. And then in Where 2, the first petition references G6. Then they revise it to make it G6 and G4, right? So now what are they pursuing? Are they pursuing G6 or G4? I think they've abandoned G4, which is the addition, but the addition is shown on the diagram that they submitted. So it's a lot of maneuvering. I know. It's a head-scratcher, and it's meant to be because somebody else will throw up their hands and say, oh, well, just let them do what they want to do. That's the point of Judge Bennett thoroughly looking at this case and deciding that it was not plausible because under Andon, she did not have a reasonable expectation to have this church in this neighborhood. That's the essence of the case. Do you see a difference between a case which says your hypothetical was a residential neighborhood and there was no evidence that churches were permitted, whereas she goes into a neighborhood which is residential and has churches in it, and the regulation says churches are explicitly permitted, as said by the. . . There were no churches in the neighborhood, Your Honor. There were churches nearby, but not in Diana Acres. There were no churches in Diana Acres, the development. There were churches nearby, and those properties were corner properties. They had adequate parking, and there were no issues. There are issues here because they tried. . . She tried to plop a church right in the middle of this neighborhood. But what aspect of the statute did she not comply with? She didn't meet the substantial burden. In other words, she cannot show that she was substantially burdened based on Andon, which says if you have no reasonable expectation of being able to do what you want to do, then you have no substantial burden claim. Okay. All right, Mr. Mahe. . . Thank you. Your Honor, may I please the Court? Paul Mahe on behalf of Baltimore County. I think what would please the Court the most is if I just sat down. But I do want to. . . You asked the question, Judge Agee, about whether the statute in Andon allowed the church as of right, and it did. It says, The ordinance provides a property zone for commercial use may be used for a community facility, including a place of worship or church, when four conditions are satisfied. So I believe that's essentially the same or actually the same as the county statute in this case. I think the term as of right has been blown a little out of proportion when one looks at the BCZR, which is extensive and is conceded by the plaintiffs to be valid in this case. They are not challenging the facial validity of this case. So what Mr. Nolan is saying is correct, is that as Judge Bennett held. . . Can I ask a question about Andon? Yes. Because you read something that seems inconsistent with a portion of the opinion that I'm looking at. The Court, I don't have the page number here, but says, When the plaintiffs entered into the prospective lease agreement, the property was not a permitted site for a community facility such as a church. I believe it was subsequently. . . It says Andon has purchased the property, a parcel since 1997. The property continuously has been classified for commercial use under the city's zoning ordinance. The ordinance provides, and I'm reading from Andon at the first page, that properties zoned for commercial use may be used for a community facility, including a place of worship or church, only when four conditions are satisfied, and then they go through the conditions, including primarily the setback condition. All right. Go ahead. So I believe that the District Court was correct in viewing Andon as a controlling precedent that he was bound to apply. The facts are the same. In fact, in actuality, the plaintiff in Andon was more prudent in that they at least entered into a contingent lease, whereas the plaintiff here entered into a non-contingent purchase agreement without a reasonable expectation that her zoning application would be approved. So permitted as of right does not go as far as the plaintiffs and the DOJ would suggest. Well, the allegations here are on August 31, Reverend Ware purchased the property for use as a church. The property is zoned DR 3.5, the County Density Residential 3.5 Zoning District. The DR 3.5 Zoning District permits a place of worship as use permitted by right, and then say the property is located in a mixed-use area with schools, churches, multifamily residential uses, and other assemblies and institutional land uses. These are all allegations of the complaint, which I'm not sure the District Court gave full credence to. Well, I don't know that they go to the issue of this particular neighborhood. Well, that's what they're alleging here, aren't they? They're alleging generally that the neighborhood at large, which we're not sure what geographic scope they're using, has the things all neighborhoods have. They allege the particular address. So let me go back to Andon. And so, as I understand the facts in Andon, the petitioner in that case was seeking to use an existing building that clearly did not comply with the setback requirements. That's not the facts of this case. It is the facts of this case, Your Honor. Is it a new building or an existing? No, it's an existing. It was a single-family home for 61 years. Okay. And it lies 28 feet from the neighboring property line. They are seeking to convert it to a church with parking for 16 spaces, even though we know from the hearings that there were 50 cars back there the first time they held a service. So, yes, the point is that when they go to convert the home from a residential dwelling to a church, it generates, as the vernacular is, this RTA, which precludes the church from operating within that buffer. And they're squarely within the buffer. So where one was properly decided. Well, that's where one. So now we're at where two, right? Yes. Okay. Where one was properly decided, notwithstanding the change in where two, they still have the problem of the house in the buffer zone. And in Andon, the setbacks were given teeth. The district court and this court looked at it and said, well, you met the setbacks on two of the sides, but you didn't meet the third, and the city was entitled to enforce that. That's what we have here. Well, except that we don't have a decision on the merits as to where two, do we? And it would be an easier case for me, I acknowledge, if we did, because I don't think they're going to get around that fundamental problem. But the allegation is that we didn't, so our RLUPA violation essentially is we didn't give them a second bite at the apple. That's what they're saying. And I think the district court's reading of the law was accurate. I think Andon stands for the proposition that when you essentially assume the risk of zoning approval, and it's not a reasonable risk, that's on you, not the government. In other words, the government isn't there to treat you more favorably than they would a secular use if your zoning doesn't go through, unless you can clearly show that you had that reasonable expectation. And given all the setback problems they had and the overarching requirement that the property, the use of the property, be compatible with the residential nature of that block. It's never going to be compatible for their neighbor to have to look out their kitchen window and see a parking lot of 16 or possibly 50 cars. So they did assume the risk. And the law in this case under Bethel is that unless the government is the direct primary and fundamental reason for the church's inability to practice their religion, they're not liable. And we are not the direct cause. Plaintiff herself is. There are 650 churches in Baltimore County. There are thousands of locations she could have located this church instead of smack in the middle of a very residential lot. They allege differently. Pardon me? They allege differently. They allege differently. They allege within a quarter of a mile there are a couple of churches, they allege there are institutional things within their area in the complaint. And you may be right, but I think... But Your Honor, I... I think we're out of red light. I'll call Mr. Storrs. Thank you. Yeah. Thank you, Your Honors. Again, I might be beating a dead horse here, but it appears that the county's position, again, in its briefing and argument is that the church did not comply because it did not meet the setback and buffer requirements. The regulations do not require that a church meets the setback and buffer requirements, only that they meet them to the extent possible. That is a fundamental distinction from this case and the Andon case where this court held that or recognized that in Andon that property could be used as a community facility only where four conditions are satisfied. If the zoning regulations here stated a church can locate in this zoning district only if it has a 75-foot setback and a 50-foot buffer, then it might be a different case. It might be more like Andon, but that's not what they say. There is an exception for new churches here, and we fall within that exception. It's in the zoning regulations. We meet it to the extent possible. Certainly that's alleged in the complaint. Paragraph 142 of the complaint makes that allegation specifically. And with that, Your Honors, if there's any further questions, I have nothing further. Thank you.
judges: Paul V. Niemeyer, G. Steven Agee, Albert Diaz